# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBERT MCKREITH, <br><br> Petitioner, <br><br> v. <br><br> STEVEN LAKE, Warden, <br><br> Respondent. | Case No.: 1:19-cv-00365-SKO (HC) <br><br> ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS <br><br> ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE <br><br> ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He is currently in the custody of the Bureau of Prisons ("BOP") at the United States Penitentiary located in Atwater, California. The action is proceeding on the First Amended Petition, filed on May 20, 2019. (Doc. 6.) Petitioner claims the BOP is unlawfully collecting restitution payments from his account to satisfy his criminal judgment. For reasons that follow, the Court concludes that the petition fails on the merits and will be DENIED.[1]

## BACKGROUND

On December 18, 2002, Petitioner was found guilty in the United States District Court for the Southern District of Florida, by jury trial, of seven counts of bank robbery, in violation of 18 U.S.C. §

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the Magistrate Judge for all purposes, including entry of final judgment. (Docs. 4, 10.)

1

2113(a), and three counts of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). United States v. McKreith, Case No. 01-cr-06095-DMM (S.D. Fla. 2002), (Doc. 132). On March 3, 2003, Petitioner was sentenced to terms of 210 months for each count of bank robbery, to run concurrently, and terms of 300 months for each count of use of a firearm, to run consecutive to each other and to the terms for bank robbery, for an aggregate term of 1,110 months in federal prison. Id., (Doc. 151). Petitioner was also ordered to pay a special assessment of $1,000 and restitution in the amount $83,697, according to the following schedule:

> During the period of incarceration, payment shall be made as follows: (1) if the defendant earns wages in a Federal Prison Industries (UNICOR) job, then the defendant must pay 50% of wages earned toward the financial obligations imposed by this Judgment in a Criminal Case; (2) if the defendant does not work in a UNICOR job, then the defendant must pay $25.00 per quarter toward the financial obligations imposed in this order.

Id., (Doc. 151).

On February 28, 2003, Petitioner appealed to the Eleventh Circuit District Court. Id., (Doc. 152). On August 16, 2005, the Eleventh Circuit affirmed the judgment. Id., (Doc. 195.)

Petitioner then filed a motion to vacate judgment pursuant to 28 U.S.C. § 2255 on December 29, 2006. McKreith v. United States, Case No. 06-cv-61942-DMM (S.D. Fla. 2010), (Doc. 1). He raised fourteen claims asserting ineffective assistance of counsel and two claims alleging government suppression of exculpatory evidence. Id. None of the claims concerned the restitution fines. The district court denied the motion on the merits on March 31, 2010. Id., (Doc. 25). He filed a second § 2255 motion on December 28, 2015, and the district court denied the motion on May 31, 2016, as an unauthorized successive motion. McKreith, Case No. 01-cr-06095-DMM, (Docs. 206, 207). He filed a third § 2255 motion on June 2, 2017. Id., (Doc. 209). The motion was dismissed on July 11, 2017, as an unauthorized successive motion. Id., (Doc. 210.) On May 21, 2018, Petitioner filed a motion to have his sentence commuted. Id., (Doc. 212). On August 2, 2018, the motion was denied. Id., (Doc. 215). On January 2, 2019, Petitioner filed a motion to correct his sentence pursuant to the First Step Act of 2018. Id., (Doc. 217). On February 27, 2019, the motion was denied. Id., (Doc. 220).

On March 18, 2019, Petitioner filed a petition for writ of mandamus in this Court. On April 11, 2019, the Court dismissed the petition with leave to file an amended § 2241 petition, because Petitioner failed to name a proper respondent and failed to state a cognizable claim.

On May 20, 2019, Petitioner filed a First Amended Petition. (Doc. 6.) Respondent filed a response on July 25, 2019. (Doc. 9.) Petitioner filed a traverse on August 5, 2019. (Doc. 11.)

**DISCUSSION**

I.     Jurisdiction

A federal prisoner who wishes to challenge the validity or constitutionality of his federal conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir.1988); see also Stephens v. Herrera, 464 F.3d 895, 897 (9th Cir.2006), *cert. denied*, 549 U.S. 1313 (2007). In such cases, only the sentencing court has jurisdiction. Tripati, 843 F.2d at 1163; Hernandez v. Campbell, 204 F.3d 861, 865 (9th Cir. 2000). Generally, a prisoner may not collaterally attack a federal conviction or sentence by way of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Grady v. United States, 929 F.2d 468, 470 (9th Cir.1991); Tripati, 843 F.2d at 1162; see also United States v. Flores, 616 F.2d 840, 842 (5th Cir.1980).

In contrast, a prisoner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the district where the petitioner is in custody. Stephens, 464 F.3d at 897; Hernandez, 204 F.3d at 865. "The general rule is that a motion under 28 U.S.C. § 2255 is the exclusive means by which a federal prisoner may test the legality of his detention, and that restrictions on the availability of a § 2255 motion cannot be avoided through a petition under 28 U.S.C. § 2241." Stephens, 464 F.3d at 897 (citations omitted).

In this case, Petitioner claims that the BOP has no authority to collect restitution payments to satisfy the court-imposed criminal judgment. Such a claim concerns the conditions of the sentence's execution. Therefore, the Court has jurisdiction to consider this claim pursuant to 28 U.S.C. § 2241. Stephens, 464 F.3d at 897; Hernandez, 204 F.3d at 865. However, to the extent that Petitioner challenges the sentencing court's restitution order, such a claim concerns the validity and constitutionality of his sentence and should be raised in the sentencing court.

3

II.     Challenge to Sentence

As noted by Respondent, an exception exists by which a federal prisoner may challenge his sentence pursuant to § 2241, referred to as the "savings clause" or "escape hatch" of § 2255. United States v. Pirro, 104 F.3d 297, 299 (9th Cir.1997) (quoting 28 U.S.C. § 2255); see Harrison v. Ollison, 519 F.3d 952, 956 (9th Cir. 2008); Hernandez, 204 F.3d at 864-65. "[I]f, and only if, the remedy under § 2255 is 'inadequate or ineffective to test the legality of his detention'" may a prisoner proceed under § 2241. Marrero v. Ives, 682 F.3d 1190, 1192 (9th Cir. 2012); see 28 U.S.C. § 2255(e). The Ninth Circuit has recognized that it is a very narrow exception. Ivy v. Pontesso, 328 F.3d 1057, 1059 (9th Cir. 2003). The exception will not apply "merely because section 2255's gatekeeping provisions," such as the statute of limitations or the limitation on successive petitions, now prevent the courts from considering a § 2255 motion. Id., 328 F.3d at 1059 (ban on unauthorized or successive petitions does not *per se* make § 2255 inadequate or ineffective); Aronson v. May, 85 S.Ct. 3, 5 (1964) (a court's denial of a prior § 2255 motion is insufficient to render § 2255 inadequate.); Moore v. Reno, 185 F.3d 1054, 1055 (9th Cir. 1999) (per curiam) (§ 2255 not inadequate or ineffective simply because the district court dismissed the § 2255 motion as successive and court of appeals did not authorize a successive motion).

The Ninth Circuit has held that Section 2255 provides an "inadequate and ineffective" remedy (and thus that the petitioner may proceed under Section 2241) when the petitioner: (1) makes a claim of actual innocence; and, (2) has never had an "unobstructed procedural shot" at presenting the claim. Harrison, 519 F.3d at 959; Stephens, 464 F.3d at 898; *accord* Marrero, 682 F.3d at 1192. The burden is on the petitioner to show that the remedy is inadequate or ineffective. Redfield v. United States, 315 F.2d 76, 83 (9th Cir. 1963). If a petitioner fails to meet this burden, his § 2241 petition must be dismissed for lack of jurisdiction. Ivy, 328 F.3d at 1060. In this case, Petitioner does not claim actual innocence, nor does he demonstrate that he has never had an unobstructed procedural opportunity to present his claim.

In the Ninth Circuit, a claim of actual innocence for purposes of the Section 2255 savings clause is tested by the standard articulated by the United States Supreme Court in Bousley v. United States, 523 U.S. 614 (1998). Stephens, 464 U.S. at 898. In Bousley, the Supreme Court explained

4

that, "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (internal quotation marks omitted). Actual innocence means factual innocence, not mere legal insufficiency. Id. In this case, Petitioner makes no claim of being factually innocent of bank robbery or using a firearm during commission of the bank robberies. Rather, he takes issue with the sentence imposed. Under the savings clause, Petitioner must demonstrate that he is actually innocent of the crime for which he has been convicted, not the sentence imposed. See Ivy, 328 F.3d at 1060; Lorentsen, 223 F.3d at 954 (to establish jurisdiction under Section 2241, petitioner must allege that he is "'actually innocent' of the crime of conviction").

To determine whether a petitioner never had an unobstructed procedural shot to pursue his claim, the Court considers "(1) whether the legal basis for petitioner's claim 'did not arise until after he had exhausted his direct appeal and first § 2255 motion;' and (2) whether the law changed 'in any way relevant' to petitioner's claim after that first § 2255 motion." Harrison, 519 F.3d at 960 (quoting Ivy, 328 F.3d at 1060-61). "An intervening court decision must 'effect a material change in the applicable law' to establish unavailability." Alaimalo, 645 F.3d at 1047 (quoting Harrison, 519 F.3d at 960). That is, an intervening court decision must "constitute[] a change in the law creating a previously unavailable legal basis for petitioner's claim." Harrison, 519 F.3d at 961 (second emphasis added) (citing Ivy, 328 F.3d at 1060). In this case, the legal basis for Petitioner's claim was available at sentencing. In addition, Petitioner does not claim that the law changed in any way relevant to his prior § 2255 motions, and he had multiple opportunities to present his challenge to the sentencing court.

Accordingly, the Court concludes that with respect to any claim concerning the sentencing court's restitution order, Petitioner has not demonstrated that Section 2255 constitutes an "inadequate or ineffective" remedy. Thus, the Court is without jurisdiction to consider such a claim.

III.     BOP Collection of Restitution Payments

Petitioner contends that the BOP lacks the authority to set a schedule for restitution payments. He claims the BOP set up a schedule of restitution payments in violation of Ward v. Chavez, 678 F.3d 1042 (9th Cir. 2012). He further claims that the BOP has unlawfully established a schedule for

5

collection under its Inmate Financial Responsibility Program ("IFRP"). Finally, he contends that the BOP has unlawfully sanctioned him for his refusal to participate in the IFRP. Petitioner's claims are without merit.

First, Petitioner's claims that: (1) the BOP does not have authority to set a schedule for restitution payments, and (2) the sentencing court impermissibly delegated its authority by ordering payment of restitution without specifying any payment schedule in violation of Ward, are plainly without merit since the sentencing court did no such thing. As previously set forth, the sentencing court did not delegate its sentencing authority but ordered restitution according to the following schedule:

> During the period of incarceration, payment shall be made as follows: (1) if the defendant earns wages in a Federal Prison Industries (UNICOR) job, then the defendant must pay 50% of wages earned toward the financial obligations imposed by this Judgment in a Criminal Case; (2) if the defendant does not work in a UNICOR job, then the defendant must pay $25.00 per quarter toward the financial obligations imposed in this order.

Id., (Doc. 151). As correctly noted by Respondent, the above restitution order is nearly identical to the petitioner's judgment upheld in Lewis v. Matevousian, 2016 WL 4494433, *2 (E.D. Cal. 2016), wherein the sentencing court instructed:

> If the defendant, while incarcerated, is working in a non-UNICOR or grade 5 UNICOR job, the defendant shall pay $25.00 per quarter toward defendant's monetary obligation. If working in a grade 1–4 UNICOR job, defendant shall pay 50% of defendant's monthly pay toward defendant's monetary obligation. Any change in this schedule shall be made only by order of this Court.

Like the sentencing court in Lewis, the sentencing court in this case complied with the requirements of Ward and 18 U.S.C. § 3664 in considering the various jobs available and Petitioner's financial resources in its order setting a repayment schedule.

Second, there is no merit to Petitioner's claim that the BOP unlawfully established a schedule of payments for him under the IFRP. As stated above, the sentencing court established the schedule of payments, not the BOP. In addition, the Ninth Circuit, in United States v. Lemoine, 546 F.3d 1042, 1046 (9th Cir. 2008), held that "the BOP's operation of the IFRP does not constitute an unlawful delegation of authority to schedule restitution repayments."

Third, Petitioner's allegation that the BOP unlawfully sanctioned him for refusing participation in the IFRP is also meritless. In <u>Lemoine</u>, the Ninth Circuit noted that "[a]n inmate is free to decline to participate in the IFRP, but the failure either to participate or to comply with a financial plan created pursuant to the program carries certain consequences." <u>Id</u>., at 1047. Those consequences are set forth in 28 C.F.R. § 545.11(d):

> (d) Effects of non-participation. Refusal by an inmate to participate in the financial responsibility program or to comply with the provisions of his financial plan ordinarily shall result in the following:
>
> (1) Where applicable, the Parole Commission will be notified of the inmate's failure to participate;
>
> (2) The inmate will not receive any furlough (other than possibly an emergency or medical furlough);
>
> (3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;
>
> (4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility;
>
> (5) The inmate will not be placed in UNICOR. Any inmate assigned to UNICOR who fails to make adequate progress on his/ her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months. Any exceptions to this require approval of the Warden;
>
> (6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refusees shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;
>
> (7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);
>
> (8) The inmate will not be placed in a community-based program;
>
> (9) The inmate will not receive a release gratuity unless approved by the Warden;
>
> (10) [Reserved]
>
> (11) The inmate will not receive an incentive for participation in residential drug treatment programs.

Lemoine, 546 F.3d 1042, 1047. The Ninth Circuit found no illegality or constitutional infirmity in the IFRP, or in the adverse consequences that could attend an inmate's non-participation. Id. at 1049.

Therefore, Petitioner's claims are clearly without merit and the petition must be denied.

IV. Certificate of Appealability

With respect to any challenge to the legality of the sentence, the Court declines to issue a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). A successive petition under 28 U.S.C. § 2255 that is disguised as a § 2241 petition requires a certificate of appealability. Harrison v. Ollison, 519 F.3d 952, 958 (9th Cir. 2008); Porter v. Adams, 244 F.3d 1006, 1007 (9th Cir. 2001). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>   (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>   (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

The Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Thus, the Court DECLINES to issue a certificate of appealability.

**ORDER**

For the foregoing reasons, the Court HEREBY ORDERS:

1) The First Amended Petition for Writ of Habeas Corpus is DENIED;
2) The Clerk of Court is DIRECTED to enter judgment and close the case; and
3) The Court DECLINES to issue a certificate of appealability.

This terminates this action in its entirety.

IT IS SO ORDERED.

Dated: **September 2, 2019** /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE